UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60565-CIV-ZLOCH

SONYA GOSSARD,

        Plaintiff,

vs.                                      <u>**O R D E R**</u>

JP MORGAN CHASE & CO.,

        Defendant.
_____/

     THIS MATTER is before the Court upon Defendant JP Morgan Chase & Co.'s Motion For Summary Judgment (DE 26).  The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

     This is an employment action.  Plaintiff, a former employee of Defendant, alleges that she was discriminated and retaliated against by her immediate supervisor.  Specifically, Plaintiff claims that she was treated less favorably than other employees, ranging from less courteous treatment up to termination, and that she was retaliated against for complaining about the same. Defendant denies any wrongdoing.

     Before turning to the facts of this action, the Court desires to state clearly the calculus that went into distilling the Parties' two contrary versions of the facts into one.  Along with its instant Motion, Defendant filed its Undisputed Statement Of Facts (DE 26, pp. 2-10) as required by Local Rule 7.5.  It is evidently necessary to draw Plaintiff's attention to the text of

that Local Rule concerning the form and substance responses in opposition to summary judgment must take. Local Rule 7.5 states, quite clearly, that papers opposing a summary judgment motion "shall include a memorandum of law, necessary affidavits, and a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." S.D. Fla. L.R. 7.5.B. The statement of material facts submitted in opposition to a motion for summary judgment must correspond with the order and paragraph numbering scheme used by the movant. Id. 7.5.C. Any additional facts that the non-moving party contends are material are to be likewise numbered and placed below. Id. This rule "ensure[s] that statements of material facts filed by movants and opponents shall correspond with each other in numerical order so as to make review of summary judgment motions less burdensome to the Court." Local Rule 7.5 Comments (2008 Amendment). If only this was the case here.

Plaintiff did not attempt to comply with the Local Rule in this regard. She does not oppose Defendant's Undisputed Statement Of Facts in any way. Instead, she offers her own, contrary version of the relevant events in her Statement Of Disputed Material Facts (DE 30) filed along with her Response (DE 31). The facts she lists fail to meet Defendant's Statement Of Facts. Her version does give the Court a clear picture of her idea of the treatment she received while employed by Defendant and what this case is truly about.

However, she fails to frame the factual issues that are in dispute and allow the Court to resolve this matter more easily. An example is set forth in the margin.[1]

Local Rule prescribes the proper course for Plaintiff's failure to controvert Defendant's Undisputed Statement Of Facts. All facts stated therein and supported by the record are deemed admitted by Plaintiff based on her failure to controvert the same. S.D. Fla. L.R. 7.5.D. The Court wants to make plain that this ruling should not be looked at as a sanction against Plaintiff or her Counsel. Because Plaintiff did not abide by Local Rule 7.5 regarding her Statement Of Facts, by operation of the same Local Rule--and not by calculated choice of this Court--Defendant's uncontroverted facts are deemed admitted to the extent supported by the record. Id. The Eleventh Circuit has upheld this Rule. Digioia v. H. Koch & Sons, 944 F.2d 809, 811 n.6 (11th Cir. 1991)

---

[1] Paragraph 14 of Defendant's Undisputed Statement Of Facts reads as follows: "On March 20, 2007, Williamson called Theckston complaining about Plaintiff's misconduct. During this telephone call, Williamson told Theckston that she refused to continue to work with Plaintiff, wanted her account reassigned and was concerned about continuing to do business with JPMorgan at all because of Plaintiff's inappropriate and unprofessional conduct." The corresponding paragraph in Plaintiff's Statement Of Disputed Material Facts reads thus: "Theckston's reponses to Gossard's inquiries and request for sales assistance substantially worsened in early 2007. Co-workers Elizabeth Stone and Jason Sullivan mentioned to Gossard they noted Theckston's attitude changed toward her, with Stone saying 'I don't know why he's riding you so hard.'" Thus, Plaintiff's Paragraph 14 fails to correspond with, let alone controvert, Defendant's Paragraph 14. The same pattern characterizes her entire Statement.

(upholding operation of former Local Rule 10.J.2, the predecessor to 7.5.D.); <u>Calmaquip Eng'g W. Hemisphere Corp. v. W. Coast Carriers, Ltd.</u>, 650 F.2d 633, 636 (5th Cir. Unit B Jul. 1981) (same).[2]

## I. Background

Plaintiff Sonya Gossard was hired in 2005 as an Account Executive (hereinafter "AE") with Defendant in its mortgage division.  She held a sales job and was tasked with building and maintaining relationships with mortgage brokers for whom Defendant would provide funding.  AE's were expected to make sales calls to two brokers per day as part of the job.  James Theckston, who hired Plaintiff, remained her boss during her two-year tenure with Defendant.  As part of his duties as head of Plaintiff's team, he occasionally accompanied AE's on their sales calls.

In June of 2006, the woman with whom Plaintiff lives and has a relationship gave birth to a baby boy, Spencer.  Theckston was invited to and attended the baby shower.

In late January of 2006, Theckston evaluated Plaintiff and found that she met expectations but also noted some areas that needed improving.  This evaluation was not materially different from the other quarterly evaluations Plaintiff would receive before

---

[2] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Spencer was born. During these evaluations Theckston told Plaintiff that she needed to bring her numbers up and refocus on certain different areas. In February, March, and April of 2006, Plaintiff failed to meet her sales goals. Following Spencer's birth, she did not meet her sales goals in July, September, November, and December of 2006.

Plaintiff alleges that in September and October of 2006, Theckston made comments to her that Spencer might affect her ability to do her job effectively. In October, Theckston drove to Plaintiff's home, not far from the local office of Defendant, to pick her up and accompany her on a sales call. While Plaintiff took a phone call, he waited and spoke with her mother. The conversation is not material.

Plaintiff was invited to Theckston's New Year's Eve party at the end of 2006, and Theckston was disappointed that she did not go. In 2007, though, the two continued to be in touch and Plaintiff invited Theckston out for a drink.

In the first quarter of 2007, Plaintiff was the second lowest AE on her team in terms of production and recognized that she needed every deal she could get. In January of 2007 a top performing AE with Defendant resigned and the accounts were distributed to the remaining AEs. Each AE on Theckston's team got one account, but in an effort to help Plaintiff's production, Theckston gave her four, including the best account.

5

On January 31, 2007, Theckston met with Plaintiff to discuss her production.  Plaintiff had come to the meeting from the Post Office and was upset because she could not put her name on Spencer's passport because she was not his biological mother. Theckston again questioned whether Spencer is affecting her performance, and Plaintiff was greatly offended and wanted Spencer left out of the discussion.  Later that day, Plaintiff emailed Theckston to tell him again that she found the questions insulting. Theckston made several attempts to contact her and the two eventually met to discuss the matter.  After this meeting, Plaintiff sent Theckston a thank you note and did not report the matter to Human Resources.

As the leader of Plaintiff's team, Theckston had the discretion to grant price concessions to brokers.  A concession is an adjustment to the interest rate in favor of the broker used to keep or increase business as necessary.  No AE was given every concession requested.  Like the others, Theckston denied some of Plaintiff's requests for concessions but granted them on numerous occasions in the first quarter of 2007.  He also responded to her emails during this time.  See DE 26, ¶ 12.

On March 20, 2007, Harsha Ramayya, an AE with Defendant, met with Marcia Williamson, a broker client of Defendant.  Williamson told Ramayya that she was upset because she has repeatedly failed to get in contact with Plaintiff regarding a loan Plaintiff was

6

processing.  Ramayya reassured Williamson and telephoned Plaintiff while sill in Williamson's presence.  After getting Plaintiff on the phone, Ramayya told her that he was with Williamson and that Williamson was trying to reach Plaintiff.  Plaintiff told Ramayya that she was not going to do anything further on Williamson's loan and that he could tell Williamson to "f*** off."  Williamson told Ramayya that she heard what Plaintiff said and asked for the name of Plaintiff's manager.  Ramayya gave Williamson Theckston's name and number and also told Plaintiff that Williamson was planning to call Theckston.

Williamson called Theckston to tell him that she would no longer do business with Plaintiff and faxed a written complaint to the same effect.  Williamson also complained to several other managerial employees of Defendant.  Theckston tried unsuccessfully to get in contact with Plaintiff and then referred to matter to Deborah Johnson of Human Resources.

The following afternoon, March 21, 2007, Plaintiff called Deborah Johnson to report that Theckston had been discriminating against her through his comments about Spencer and her ability to keep her production up.  She also told Johnson that Theckston had not been responding to her email messages.  Johnson investigated both the complaint regarding the explicit comment by Plaintiff and Plaintiff's complaints about Theckston.

Also on March 21, a broker by the name of Tim Atteberry

informed Plaintiff that he was requesting to move his account to a different AE.  Theckston became aware of the matter and informed Atteberry that he would not allow the account to be moved away from Plaintiff.   Atteberry then called Rodney Brace, Theckston's supervisor's supervisor, to demand that his account be moved. Brace made the decision to transfer the account away from Plaintiff.  The account was reassigned after Plaintiff left the employ of Defendant.

After a thorough investigation, including meetings with Plaintiff, Theckston, and others, Deborah Johnson concluded that Theckston had not treated Plaintiff differently than other employees.  She also concluded that Plaintiff did tell Ramayya that he could tell Williamson that she would do nothing further on the loan and that she could "f*** off."  On March 28, 2007, Johnson met with her supervisor and other Human Resources personnel and recommended terminating Plaintiff.  She then contacted Plaintiff to inform her that she found no misconduct by Theckston, that Plaintiff did make the statement about Williamson, and that Plaintiff would be terminated for this inappropriate statement. Plaintiff was permitted to resign in lieu of termination.[3]  There has been no evidence that any other employee made a similar remark about and in the hearing of a broker and retained employment with

---

[3] For purposes of this Order, the Court will treat this as a termination.

Defendant.

Plaintiff filed this action alleging violations of only the Florida Civil Rights Act, Fla. St. § 760.10(1)(a), -(7) (hereinafter "FCRA"). Counts I and II of her Complaint (DE 1) allege that Defendant discriminated against her on the basis of her gender and unmarried status, respectively, and Count III alleges that Defendant retaliated against her for complaining about the same. For the reasons expressed more fully below, the Court finds that no genuine issue of material fact remains and that Defendant is entitled to judgment as a matter of law. Specifically, Plaintiff has failed to establish a prima facie case of either discrimination or retaliation, and, in the alternative, Defendant has offered legitimate, non-discriminatory reasons that have not been shown to be pretext.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes
demonstrate the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation
omitted).  Indeed,

> the moving party bears the initial burden to show the
> district court, by reference to materials on file, that
> there are no genuine issues of material fact that should
> be decided at trial.  Only when that burden has been met
> does the burden shift to the non-moving party to
> demonstrate that there is indeed a material issue of fact
> that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991);
Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law"
when the non-moving party fails to make a sufficient showing of an
essential element of the case to which the non-moving party has the
burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v.
Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the
evidence of the non-movant is to be believed, and all justifiable
inferences are to be drawn in his favor.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Discrimination

Plaintiff's claims arise under the Florida Civil Rights Act.
Federal law governing the resolution of Title VII cases also
controls those brought under the FCRA.  Harper v. Blockbuster
Entertainment Corp., 139 F.3d 1385, 1389 (11th Cir. 1998).  Thus,
this action is governed by the Supreme Court's familiar burden

10

shifting analysis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this regime, Plaintiff must establish a prima facie case of discrimination. If Plaintiff succeeds in this, Defendant bears a burden of production to articulate legitimate, non-discriminatory reasons for its actions against Plaintiff. Plaintiff must then carry the ultimate burden of persuasion by establishing that Defendant's articulated reasons are pretext and undeserving of credibility. Id. at 802-03.

## A. Prima Facie Case

Under the McDonnell Douglas analysis, to establish a prima facie case of discrimination Plaintiff must show that 1) she was a member of a protected class, 2) she was qualified for the position at issue, 3) she suffered an adverse employment action, and 4) other similarly situated employees outside the class were treated more favorably. Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 842-43 (11th Cir. 2000). Defendant does not dispute that Plaintiff is a member of a protected class. DE 27, p. 2. Therefore, the only matters at issue are whether Plaintiff was qualified for the position she held, suffered an adverse employment action, and whether other similarly situated individuals were treated more favorably than she.

Defendant argues that Plaintiff was not qualified for her position because she failed to meet her sales goals for a number of months, especially after Spencer was born. DE 26, ¶¶ 5-6, 8. In

11

her deposition, Plaintiff explained her performance as conditioned on the market and not solely her efforts. Deposition of Sonya Gossard, DE 28, Ex. A, pp. 91-92 (hereinafter "Plaintiff Depo."). Taking the facts in the light most favorable to Plaintiff, the Court will assume for purposes of this Order that she was qualified for the position she held.

The second element Plaintiff must establish is that she suffered an adverse employment action. As stated above, Plaintiff was terminated by Defendant.[4] The Court finds that termination of employment is an adverse employment action. Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir. 2001). In her Response (DE 31) to the instant Motion, termination is the only adverse employment action of which Plaintiff complains for her discrimination claims. See DE 31, pp. 11-13. Thus, she has waived all other allegations of adverse employment actions for her discrimination claims. However, for the benefit of the Parties and any reviewing court, the Court will address the other claims for disparate treatment raised in her other filings. The actions complained of include Theckston's heightened scrutiny of Plaintiff, including monitoring her outgoing voicemail message, his several

---

[4] Defendant argues in its Motion (DE 27, p. 6 n.3) that in her deposition Plaintiff only characterized her termination as an adverse employment action for her retaliation claim and abandoned it for her discrimination claims. For the sake of a fuller review, the Court will analyze her termination both for her discrimination and retaliation claims.

comments questioning whether and hinting that Spencer might affect Plaintiff's performance, his planning to accompany Plaintiff on a sales call, speaking with Plaintiff's mother at her home, and his refusing to answer her emails & return her phone calls timely.

The employer action necessary to sustain a claim for discrimination must "meet a threshold level of substantiality." Davis, 245 F.3d at 1238-39.  That is, "to prove adverse employment action in a case under [the FCRA's] anti-discrimination clause, [Plaintiff] must show a serious and material change in the terms, conditions, or privileges of employment."  Id. at 1239.  This standard would encompass "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 760-61 (1998); see also Grimsley v. Marshalls of MA, Inc., 284 Fed. Appx. 604, 608-09 (11th Cir. 2008).[5]

_____

[5] The Supreme Court, in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. ___, 126 S. Ct. 2405, 2409 (2006), lowered the bar for adverse employment actions necessary to sustain a claim for retaliation, but did not adjudicate a discrimination claim.  Thus, the rule announced therein has no application to claims for discrimination.  Id. (defining the anti-retaliation provision of Title VII to prohibit "employer actions [that are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination"); DaCosta v. Birmingham Water Works & Sewer Bd., 256 Fed. Appx. 283, 288 n.6 (11th Cir. 2007) ("We further note that the broader view of adverse employment actions taken by the Supreme Court in [White] appears limited to retaliation cases and does not alter this court's precedent in

Other than termination, the only action noted above that could rise to the level of an adverse employment action is Theckston's failure to respond to emails and phone calls timely.  All other actions complained of, including Theckston's heightened scrutiny of Plaintiff and her outgoing voicemail message, his several comments questioning whether and hinting that Spencer might affect Plaintiff's performance, his planning to accompany Plaintiff on a sales call, and speaking with Plaintiff's mother at her home fail to rise to that level.  This behavior toward Plaintiff, even if unwelcome, does not sufficiently alter the terms, conditions, and privileges of her employment to constitute an adverse employment action.  Grimesley, 284 Fed. Appx. at 608-09; Davis, 245 F.3d at 1238-39.

Regarding Theckston's alleged failure to respond to emails and phone calls, the Court finds that Plaintiff admitted this did not happen.  As alleged by Defendant's Undisputed Statement Of Facts (DE 26, ¶ 12), and uncontroverted by Plaintiff, Theckston did respond to her phone calls and emails during the end of 2006 though her termination in March of 2007.  See Plaintiff Depo. pp. 154-71, 201-06.  Moreover, he continued granting her price concessions during this period.  Id.  Plaintiff's contentions that Theckston failed to respond to her emails and phone calls in a timely manner

---

discrimination actions.").

is not supported by the record.[6]  Therefore, the Court finds that
Plaintiff has shown that she suffered an adverse employment action,
and it was limited to her termination.

The final part of Plaintiff's prima facie case requires the
Court to determine whether similarly situated individuals outside
the protected class received more favorable treatment than those in
the protected class.  E.g., MacPherson v. Univ. of Montevallo, 922
F.2d 766, 774 (11th Cir. 1991).  Such disparate treatment is
established by highlighting an individual engaging in the same
conduct as Plaintiff but receiving better treatment.  Id.

"In determining whether employees are similarly situated for
purposes of establishing a prima facie case, it is necessary to
consider whether the employees are involved in or accused of the
same or similar conduct and are disciplined in different ways."
Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (citation
omitted).  The Eleventh Circuit requires a very high degree of
similarity for a co-worker to be considered a similarly situated
individual.  See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir.
1999) ("[T]he quantity and quality of the comparator's misconduct
[must] be nearly identical to prevent courts from second-guessing
employers' reasonable decisions and confusing apples with

---

[6] Plaintiff's argument that Theckston's response time to
emails and phone calls was slower clearly cannot be considered an
adverse employment action.  Davis, 245 F.3d at 1239 (requiring "a
serious and material change in the terms, conditions, or privileges
of employment") (emphasis in original).

oranges."); see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).  This high standard of similarity prevents the Court from sitting as an Article III personnel department and reviewing the varying discipline of a defendant's employees.  See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Plaintiff has failed to point to any individual who said the same shocking remark within earshot of a client as she did.  In her Response, she argues that the Court should apply a "comparable serious standard" to comparators. DE 31, p. 9.  However, she still points to no other individual engaging in conduct even remotely close to hers.  See DE 26, ¶ 22; see also Affidavit of James Theckston, DE 28, Ex. T, ¶ 16.  Taking the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to point to any other comparator such that the Court can find a similarly situated employee treated more favorably. Maniccia, 171 F.3d at 1368.

Therefore, there is no genuine issue of material fact for trial on the question of whether there were similarly situated employees treated more favorably for Plaintiff to establish a prima facie case of discrimination on the basis of gender or marital status.  Thus, Defendant is entitled to summary judgment on Plaintiff's claims for discrimination. However, in the alternative and for the benefit of the Parties and any reviewing court, the

Court will assume Plaintiff has met her prima facie burden.

### B. Legitimate, Non-discriminatory Reason

The burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. McDonnell Douglas, 411 U.S. at 802.   This burden is one of production, and not persuasion, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Burdine, 450 U.S. at 256-58, because under the McDonnell Douglas burden shifting analysis, "[t]he plaintiff [always] retains the burden of persuasion."   Burdine, 450 U.S. at 256.

Defendant states that Plaintiff was fired for her alarming incivility in telling Marcia Williamson, one of her brokers, that she would do nothing further on her account and that she could "f*** off."   The Court finds that this whammy is a legitimate, non-discriminatory reason for terminating an employee.   Magnusson v. The Hartford, 258 Fed. Appx. 444, 446 (3d Cir. 2007) (finding that employee's statement of "f*** you, motherf***er" to himself but in the hearing of a client was a legitimate, non-discriminatory reason for his termination).   Accordingly, the Court finds that Defendant has met its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's termination.

### C. Pretext

The burden now shifts to Plaintiff to demonstrate that Defendant's stated reason for its action against her is pretext and

17

undeserving of credibility.  <u>McDonnell Douglas</u>, 411 U.S. at 804.
Thus, Plaintiff must show that Defendant's articulated legitimate,
non-discriminatory reason, Plaintiff's expletive regarding and
overheard by a client, is pretext.

At the previous stage in the analysis, Defendant bore a burden
of articulating some legitimate, non-discriminatory reason.  It was
not necessary that Defendant establish that it in fact relied on
that reason.  <u>Burdine</u>, 450 U.S. at 254-55.  Now, though, in
reviewing the articulated reason for pretext, the Court must
determine whether genuine issues of fact surround the question of
whether Defendant terminated Plaintiff for discriminatory reasons
or, for example, based on its articulated reason.  <u>Hicks</u>, 509 U.S.
at 510-11.  "[T]he ultimate question [is] discrimination <u>vel</u> <u>non</u>."
<u>United States Postal Serv. Bd. Of Governors v. Aikens</u>, 460 U.S.
711, 714 (1983).

Plaintiff argues in her Response that Theckston's claim that
Plaintiff made the explicit statement about a broker is unworthy of
credence because Theckston's other actions establish the non-
probability that she made the statement.  DE 31, pp. 12-14.
However, Plaintiff's failure to controvert Defendant's assertion in
its Undisputed Statement Of Facts that she made the explicit remark
in the hearing of a client results in the same being deemed

admitted.  S.D. Fla. L.R. 7.5.D.[7]  Because Plaintiff thereby admits
that she made that statement, she cannot now claim that Defendant's
invocation of it is pretext.  <u>Humphrey v. Sears, Roebuck, & Co.</u>,
192 F. Supp. 2d 1371, 1375 (S.D. Fla. 2002).  "[A] reason cannot be
proved to be 'a pretext for discrimination' unless it is shown both
that the reason was false, and that discrimination was the real
reason."  <u>Hicks</u>, 509 U.S. at 515 (emphasis removed).  Plaintiff has
failed to establish a genuine issue of material fact on the
question of whether Defendant's articulated reason is pretext for
discrimination.[8]  <u>Id.</u>

### D. <u>Conclusion</u>

Therefore, based on the foregoing analysis, the Court finds
that Plaintiff has failed, as a matter of law, to make out a prima
facie case for discrimination.  However, if a reviewing court
should find that she has proven a prima facie case, the Court
alternatively finds that Plaintiff has failed to show that
Defendant's legitimate, non-discriminatory reason for terminating
her is pretext.  Accordingly, Defendant is entitled to judgment as
a matter of law on Plaintiff's claims for discrimination under the

---

[7] Also, in her deposition, Plaintiff did not deny making the
remark.  Rather, she stated that it was "absolutely" possible she
could have made that remark in the situation as explained, and
could say it in any frustrating situation.  Plaintiff Depo. pp.
218-19.

[8] Plaintiff has failed to point to any evidence that would
create a genuine issue of material fact on the question of whether
Deborah Johnson had a discriminatory motive for terminating her.

FCRA.  <u>See</u> <u>Holifield</u>, 115 F.3d at 1565-66 (noting that since the plaintiff "has not come forward with any evidence to show that [defendant's] reason is pretextual, summary judgment is warranted") (citations omitted).

## IV. <u>Retaliation</u>

In Count III of her Complaint (DE 1), Plaintiff alleges that she was retaliated against for engaging in statutorily protected activity in violation of the FCRA, Fla. St. § 760.10(7).  The retaliatory acts she points to include transfer of an account to another employee and terminating her.  Plaintiff alleges that her protected activity was her complaining to Human Resources about Theckston's actions, which she argues were discriminatory.

The analysis of a claim for retaliation under the FCRA proceeds in the same manner under <u>McDonnell Douglas</u> as Plaintiff's discrimination claims.  <u>Harper</u>, 139 F.3d at 1389.  Plaintiff must first establish a prima facie case, which then shifts the burden to Defendant to articulate a legitimate, non-discriminatory reason for the employment action.  If Defendant carries this burden of production, the ultimate burden of persuasion shifts back to Plaintiff to establish that Defendant's stated reasons are pretext. <u>Id.</u>

### A. <u>Prima Facie Case</u>

To establish a prima facie case of retaliation, Plaintiff must demonstrate that she engaged in statutorily protected activity,

20

that she suffered an adverse employment action, and that there was a causal connection between the two.  Holifield, 115 F.3d at 1566. In order to make out a prima facie case and survive summary judgment, Plaintiff must demonstrate the aforementioned elements by a preponderance of the evidence.  Burdine, 450 U.S. at 252-53.

Plaintiff complained to Deborah Johnson about being subjected to heightened scrutiny by Theckston, including monitoring her outgoing voicemail message, his several comments questioning whether and hinting that Spencer might affect Plaintiff's performance, his planning to accompany Plaintiff on a sales call, speaking with Plaintiff's mother at her home, and his refusing to answer her emails & return her phone calls timely.  The Court's finding above that this conduct does not constitute unlawful conduct does not thereby foreclose Plaintiff's retaliation claim. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 586 (11th Cir. 2000) (noting that protected activity includes protesting lawful conduct that the plaintiff in good faith believed was unlawful).  The Court will assume for purposes of this Order that Plaintiff's complaint to Johnson on March 21, 2007, was protected activity.

In the context of retaliation, an adverse employment action is any materially adverse action by an employer that could dissuade an employee from making a charge of discrimination.  Burlington Northern and Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405, 2415 (2006).  Plaintiff argues that two actions by Defendant

constitute adverse employment actions: the removal of an account from her and her termination.  Termination satisfies the standard. Id.

Plaintiff argues in her Response that Theckston caused the account of Tim Atteberry to be removed from her and transferred to another AE.  The transfer of such an account would mean the loss of commissions to Plaintiff; thus, if this was true, it would likely satisfy the standard for an adverse employment action because it affected her pay.  However, the Court is without occasion to make such a ruling, because the record establishes that Theckston did not engage in any adverse employment action regarding the account with Tim Atteberry.  First, Theckston did not remove the account from Plaintiff; rather, Rodney Brace, Theckston's supervisor's supervisor, made the decision to transfer the account.  Plaintiff Depo. p. 267; DE 26, ¶ 23; Affidavit of James Theckston, DE 28, Ex. T, ¶ 19.  Plaintiff points to the Affidavit of Tim Atteberry to establish that Theckston told Atteberry he did not approve of Plaintiff's lifestyle and that he wanted a man to service the account.  DE 30, pp. 21-23.  Defendant does not dispute that Theckston told Atteberry that he disapproved fo Plaintiff's lifestyle; however, this fact is not material.  The latter contention, that Theckston wanted a male AE to service Atteberry's account, is simply not supported by the record.  Defendant stated in its Undisputed Statement Of Facts that Theckston tried to keep

Atteberry's account with Plaintiff.  DE 26, ¶ 23.  This fact is supported by the record, Theckston Aff. ¶ 19, and has been deemed admitted by Plaintiff's failure to controvert it.  S.D. Fla. L.R. 7.5.D.  Thus, Theckston did not cause the account to be removed from Plaintiff.  In fact, he became angry that it was transferred away from her, likely because the transfer resulted in a loss of pay not only to Plaintiff, but also to Theckston himself. Theckston Aff. ¶ 19; Plaintiff Depo. pp. 132-33 (stating that "[Plaintiff's production] directly affects [Theckston's] income"). Thus, the Court finds, based on the facts alleged by Defendant and deemed admitted by Plaintiff, that Theckston did not cause the removal of Atteberry's account from Plaintiff.  The only adverse employment action applicable to her retaliation claim is her termination.

Plaintiff must also show a causal connection between the adverse employment action and the protected activity, and such causality is interpreted broadly.  Thus, to prove the third element of her prima facie case, Plaintiff need only show that the adverse employment action and the protected activity are not completely unrelated.  EEOC v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993) (citation omitted).

As stated above, Plaintiff complained to Deborah Johnson about Theckston's behavior.  Johnson was also notified by several sources that Plaintiff made the explicit remark about Marcia Williamson,

one of her brokers.  DE 26, ¶¶ 14-15; Affidavit of Deborah Johnson, DE 28, Ex. R, ¶¶ 4-5, 7, 9.  She investigated both matters, Plaintiff's complaint about Theckston and the explicit remark about Williamson.  Johnson concluded that Theckston had not done anything improper and that Plaintiff should be terminated for the remark. Affidavit of Deborah Johnson, ¶¶ 11-12.

The investigation by Johnson prevents a finding of a causal link between the termination and Plaintiff's complaint about Theckston.  Plaintiff only complains that Theckston discriminated against her, not any other individual.  DE 26, ¶ 17.  Thus, there is no complaint about Johnson's decision to fire Plaintiff.  See id. Moreover, the independent investigation by Johnson, including speaking with Plaintiff herself, insulates the same from any retaliatory motive that may have been present on the part of Theckston.  Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1248-50 (11th Cir. 1998).  Thus, Defendant is entitled to summary judgment on Plaintiff's claim for retaliation because she has failed to establish a prima facie case.  However, in the alternative and for the benefit of the Parties and any reviewing court, the Court will assume Plaintiff has met her prima facie burden.  Therefore, under the McDonnell Douglas burden shifting analysis, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its termination of Plaintiff.

### B. Legitimate, Non-discriminatory Reason

Defendant articulates as a reason for Plaintiff's termination that Plaintiff made the explicit remark about and within the hearing of a broker.  For the reasons stated above in connection with her discrimination claims, the Court finds that Defendant satisfied its burden of production to articulate a legitimate, non-discriminatory reason for terminating her.  Burdine, 450 U.S. at 256-58.

### C. Pretext

For the reasons expressed above in connection with Plaintiff's claims of discrimination, the Court finds that Plaintiff has failed to establish that Defendant's articulated reason is pretext for discrimination.  Hicks, 509 U.S. at 515.

### D. Conclusion

Therefore, based on the foregoing analysis, the Court finds that Plaintiff has failed, as a matter of law, to make out a prima facie case for retaliation.  However, if a reviewing court should find that she has proven a prima facie case, the Court finds that Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reason for terminating her is pretext.  Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's claim for retaliation under the FCRA.  See Holifield, 115 F.3d at 1565-66.

25

V. <u>Conclusion</u>

The Court finds that Plaintiff's claims for discrimination and retaliation fail for want of even a prima facie case made against Defendant.  The Court also finds in the alternative that the claims fail on the merits because Defendant has met its burden of production by offering legitimate, non-discriminatory reasons for its actions, and Plaintiff has not shown the same to be pretext. Thus, with no genuine issues of material fact remaining for trial, Defendant is entitled to judgment as a matter of law.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant JP Morgan Chase & Co.'s Motion For Summary Judgment (DE 26) be and the same is hereby **GRANTED**; and

2. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this ____19th_____ day of March, 2009.


_____
WILLIAM J. ZLOCH
United States District Judge


Copies furnished:

All Counsel of Record

26